## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

PURIS LLC,

        *Plaintiff*,

v.

ANDREW J. MAYER,

        *Defendant*.

Case No. 3:25-cv-00157-TJC-PDB

## PURIS LLC'S MOTION TO REINSTATE PRELIMINARY INJUNCTION AS TO ANY ACTIVE CONCERT OR PARTICIPATION BY NONPARTIES CMG PIPELINES, INC. AND CARMELO GUTIERREZ WITH DEFENDANT ANDREW MAYER

PURIS moves to reinstate the Stipulated Order Granting Preliminary Injunction (the "Injunction") as originally entered to restore the prohibition on CMG Pipelines, Inc. ("CMG") and Carmelo Gutierrez acting in concert or participation with Defendant Mayer to violate the Injunction.

### I.    INTRODUCTION

The Motion for Relief from the Injunction ("Relief Motion") filed by CMG and Gutierrez was brazenly deceptive. Contrary to the impression given by the Relief Motion, CMG and Gutierrez are not mere bystanders who got dragged into a business dispute between Mayer and PURIS. Rather, CMG is a company Mayer created with Gutierrez years ago to secretly and unlawfully

compete with PURIS and its subsidiary Murphy Pipeline Contractors, LLC ("MPC"). According to Mayer's own documents, he has for years been a "silent partner" in CMG, which he created to "gather experience in the same fields as [MPC]" and for which he secured rights to "a competing technology" as well as significant business and financing opportunities.[1] Mayer's level of financial control over CMG is so substantial that he single-handedly negotiated a proposed sale of CMG to Crown Electrokinetics Corp. ("Crown"), a transaction that would have yielded Mayer $12 million, or 40% of the company's value.

When Mayer stipulated to the Injunction and the hearing was taken down, he averted the presentation of this evidence to the Court. But, given the revelations in Mayer's documents, PURIS never would have agreed to a form of injunction that did not make clear that Mayer could not circumvent the injunction by competing indirectly through CMG and Gutierrez. The form of Injunction submitted to the Court thus restrained CMG and Gutierrez *only insofar as they acted in concert and participation with Mayer* (including through financial support or investment) to engage in prohibited competition. Both Fed. R. Civ. P. 65 and Eleventh Circuit law provide that injunctions apply to nonparties acting in concert and

---

[1] Declaration of Jacob Fields ("Fields Decl.") at Ex. 1 (MAYER002981).

participation with an enjoined party.

The order vacating the Injunction as to CMG and Gutierrez could be read to suggest that Mayer may now compete with PURIS indirectly through his ownership or financial interest in CMG. That result runs counter to Fed. R. Civ. P. 65 and would completely undermine the Injunction's purpose. PURIS respectfully requests that the Court reinstate the Injunction as originally ordered to make clear that CMG and Gutierrez are not permitted to act in concert or participation with Mayer to unlawfully compete with PURIS.

## II.    BACKGROUND

### A.    Pre-Hearing Discovery Reveals the Extent of Mayer's Plan to Destroy PURIS–with CMG at the Center

On February 12, 2025, PURIS filed a complaint and sought to enjoin Mayer's ongoing violation of his non-compete agreement after he joined Crown to run a competing business and started recruiting PURIS's employees. (Dkts. 1, 2). At the initial hearing, the Court denied the temporary restraining order but allowed expedited discovery and scheduled a hearing on the preliminary injunction for April 22, 2025. (Dkts. 24, 31). After multiple delays of production of documents, and just days before his scheduled deposition, Mayer abruptly resigned from Crown and unilaterally asked the Court to cancel the preliminary injunction hearing. (Dkt. 34).

When the Court declined to terminate the hearing, (Dkt. 37), Mayer was forced to produce documents demonstrating that his move to Crown was the culmination of an orchestrated campaign (starting well before he left PURIS) to capture back MPC, the business he sold to PURIS for $55 million. The scheme involved siphoning PURIS's profits and market share through a cadre of propped-up competitors and controlled vendors (including CMG), which Mayer would later market for sale to Crown.

Those documents—written by Mayer himself and sent to Crown executives and other conspirators—are quintessential "smoking gun" evidence of not only Mayer's false statements to this Court and his violation of his non-compete, but also his erstwhile-concealed financial interest in CMG, a direct competitor to PURIS and MPC. Among the key documents are two communications drafted by Mayer and emailed to Crown's CEO, Doug Croxall, in September 2024 entitled "THE PLAN"[2] and "The Move."[3]

In "THE PLAN," Mayer outlines in stunning detail his multi-year scheme to use his position at MPC to secretly form and grow a group of companies solely to compete with, and steal business from, PURIS.[4]

---

[2] *Id.* Ex. 1 (MAYER002981) (emphasis added).

[3] *Id.*; Fields Decl. Ex. 3 (MAYER003057).

[4] *Id.* Ex. 1 (MAYER002981).

Foremost among those was CMG, which Mayer admits he created with

Gutierrez in 2021:

> *I agreed to be [Carmelo Gutierrez's]* **silent partner in CMG,**
> *CMG was set up to gather experience in the same fields as*
> *Murphy and with me at the helm of Murphy I sub-contracted*
> *work to CMG.*[5]

Mayer also described steering lucrative projects away from MPC to CMG,

including specifically work in Louisiana that CMG references in its Relief

Motion (Dkt. 46 at 14):

> *I was approached by a private partner to help fund Cities in*
> *need of capital up to 1B[illion],* ***I saw the opportunity to put***
> ***the contract into CMG name and not Murphy*** *.... We have*
> *aligned with the [New Orleans] mayor elect....[who] wants*
> *CMG to rehabilitate the City with the available funds of*
> *1B[illion]. With large diameter projects coming out in Jeferson*
> *Parish, NOLA and Shreveport CMG may not need to leave*
> *Louisiana.*[6]

And in "The Move," Mayer offered Crown the chance to purchase CMG

for $30 million (as well as two other Mayer-controlled companies, PE

Pipelines, LLC and Element 82, LLC, for an additional $12 million).[7] The

core premise of his proposal was his plan to stay at PURIS while "***working***

***in the background building the crown foundation***," which would

---

[5] *Id.* (emphasis added).

[6] *Id.* (emphasis added).

[7] *Id.* Ex. 3 (MAYER003057).

allow him to "***pull the strings and build the [Crown] Goliath from within***" PURIS before departing for Crown with his team of senior MPC managers.[8] The upside to Crown was that it could purchase CMG for a fraction of PURIS's estimated price while crippling PURIS, pillaging its employees, and acquiring PURIS for pennies on the dollar when Mayer finally left the company for CMG.[9] ███████████████████

████████████████████████████████████████

████████████████████████████████████████

███ [10]

### B. Mayer Consents to the Injunction, Promising Not to Hold a Financial Interest in a Business that Competes with PURIS or MPC

In the wake of this discovery, Mayer stipulated to the entry of an agreed preliminary injunction. (Dkt. 38). The Injunction prohibits Mayer from direct or indirect involvement with any company providing trenchless pipe rehabilitation solutions and technology to the municipal wastewater and water markets within 50 miles of the defined Restricted Territory. And, in light of the new evidence regarding Mayer's affiliation with other competing

---

[8] *Id.* (emphases added).

[9] *See id.*

[10] *Id.* Ex. 7 (CROWN004370-71), Ex. 3 (MAYER003057), Ex. 14 (MAYER000871, 873).

nonparties, the Injunction also enjoins "any other persons or entities acting in concert or participation with Mayer (including through the provision or acceptance of any financial support and/or investment)," including such concert and participation by CMG and Gutierrez. (Dkt. 42 at ¶ 1). The Injunction also required Mayer to provide notice to CMG and Gutierrez. *Id.* at ¶ 5.

### C. The Parties Explain Why Nonparties' Consent Was Not Required

The Court ordered a joint status report to address "whether individuals and entities covered by [38-1] the Stipulated Order Granting Preliminary Injunction, but not parties to this case, have consented to the proposed injunction, and, if not, whether their consent is required." (Dkt. 40). In their Joint Status Report, the parties explained why consent was not required from nonparties to enjoin their active participation in a violation by the enjoined defendant: this restriction arises automatically under Fed. R. Civ. P. 65(d)(2), as recognized in the case law construing that rule. (Dkt. 41 at 1-3).

The parties also noted that some of the entities named in the Injunction had in fact consented to being listed among those who could not act in concert or participation with Mayer —namely, Crown and its subsidiaries PE Pipelines, Inc., Element 82, Inc., and CMG Pipelines XXL, Inc. *Id.* at 2 n.1.

The parties did not suggest that either Gutierrez or CMG Pipelines, Inc. had consented, but PURIS offered to provide the factual predicate for listing them if the Court was not inclined to include them by name in the Injunction. *Id*. On April 16, 2025, the Court entered the Stipulated Order Granting Preliminary Injunction. (Dkt. 42).

### D. PURIS Confronts Mayer, CMG, and Gutierrez with Evidence of Ongoing Concerted Violations, which They Fail to Rebut

On May 7, through counsel, PURIS conferred by videoconference with Mayer, CMG, and Gutierrez, and at that time raised concerns that Mayer, CMG, and Gutierrez were continuing to act in concert to compete with PURIS in violation of the Court's preliminary injunction.

On May 12, PURIS sent letters to Mayer, CMG, and Gutierrez summarizing and attaching nearly all of the documentary evidence submitted with this Motion,[11] and stating that, unless the violations ceased immediately, PURIS intended to file a motion to show cause why Mayer, CMG, and Gutierrez should not be held in contempt of the Injunction.[12] On May 14, counsel for PURIS again conferred by videoconference with counsel for Mayer, CMG, and Gutierrez. Neither denied that CMG is engaged in

---

[11] PURIS's May 12 letter did not include the declaration from Richard Crow, documents attached thereto, or Fields Decl. Exs. 15-18.

[12] *See* Fields Decl. Ex. 4 and Ex. 5.

competition with PURIS, but both asserted—in the face of contradictory evidence—that Mayer has never had any financial interest in or other involvement with CMG.

At the end of the May 14 conference, Mayer's counsel stated that they would be providing a detailed response to PURIS's letter that purportedly would show that Mayer has never had any financial interest in CMG and is not currently involved with CMG. No such response was ever sent. Accordingly, on May 27, PURIS again informed opposing counsel via email that PURIS intended to proceed with filing a show cause motion addressing their contempt.[13] The next morning, CMG and Gutierrez raced to file their Relief Motion, which omitted any substantive reference to these prior conferrals, and failed to mention or address PURIS's prior evidentiary proffer demonstrating Mayer's financial interest in and control over CMG.

## III.  ARGUMENT

### A.  The Injunction Was Lawful and Appropriate; Consent by CMG and Gutierrez Was Not Required.

The Court was squarely within its authority to enter the Injunction, which appropriately bound the identified nonparties from active concert and participation in violations by Mayer. Indeed, this feature is implicit in every

---

[13] *Id*. Ex. 6.

federal injunction by virtue of Fed. R. Civ. P. 65(d)(2). That rule governs an injunction's binding effect and states: "The order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) *other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)*" (emphasis added).

Nothing in Rule 65 requires the consent of nonparties to restrain them from acting in active concert or participation with a directly enjoined party. As the Eleventh Circuit has repeatedly recognized, "[a]n order binds those 'who receive actual notice of it,' including the parties . . . as well as 'other persons who are in active concert or participation with [them.]'" *FTC v. Leshin*, 618 F.3d 1221, 1235–36 (11th Cir. 2010) (quoting Fed. R. Civ. P. 65(d)(2)); *see also ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017) (noting that under Rule 65(d)(2)(C), nonparties who "aid and abet the party bound by the injunction in carrying out prohibited acts" may be bound by the injunction).

CMG and Gutierrez cite no cases to the contrary.  Instead, they set up a strawman by mischaracterizing the Injunction's scope and effect to argue that "a court may not enter an injunction against a person who has not been made a party to the case before it."  (Dkt. 46 at 8) (quoting *Additive Controls*

& *Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390 (Fed. Cir. 1996)). But this is beside the point because the parties did not request, and the Court did not grant, an "injunction against" CMG or Gutierrez directly. The Injunction specified that it would only apply to nonparties like CMG and Gutierrez insofar as they were "***acting in concert or participation with Mayer*** (including through the provision or acceptance of any financial support and/or investment) . . ." (Dkt. 42 at 3-6 ¶¶ 1-3) (emphases added).

Additionally, contrary to CMG's and Gutierrez's Motion, PURIS never represented that CMG Pipelines, Inc. or Gutierrez consented to the Injunction—rather, they jointly explained why no consent was required. As noted above, the parties' Joint Status Report accurately identified the subset of nonparties that consented, which did not include Gutierrez or CMG.

Finally, CMG and Gutierrez cite an April 25, 2025 termination letter from PURIS's counsel to argue that PURIS "used the Preliminary Injunction as pretext to unilaterally cancel" four subcontracts that were previously awarded by MPC when Mayer was still serving as its president. (Dkt. 46 at 14). That, too, is meritless. Given that PURIS had just learned of Mayer's financial stake and control of CMG, it is entirely reasonable that PURIS would opt to discontinue paying CMG to perform services on its behalf. In any event, the subcontracts at issue gave PURIS the right to terminate at any

time without cause, and, on its face, the termination letter cited numerous independent bases providing cause to terminate.[14]

### B. The Evidence Shows Mayer's Interest and Control over CMG—an Undisputed PURIS Competitor.

In addition to being lawfully appropriate, the inclusion of CMG and Gutierrez in the Injunction was, and is, supported by the factual record.

1.   The Documentary Evidence of Mayer's Financial Interest and Involvement in CMG

Mayer produced substantial evidence showing that he: (1) jointly created CMG as a "silent partner" for the purpose of competing with MPC, (2) holds a significant financial interest in CMG, which he has had for several years, (3) largely controls CMG's business activities and marketing efforts, (4) has and continues to develop current and future business for CMG, and (5) has recruited many of CMG's current employees.

i.   *Mayer's Explains to Crown His Financial Interest in CMG*

As explained above, in September 2024, Mayer described in "THE PLAN" how he and Gutierrez created CMG for the express purpose of competing with MPC.[15] Among other things, Mayer acknowledged being a "silent partner" in CMG, that he secured financing and projects for CMG, and

---

[14] Dkt. 47-1.

[15] *See* Fields Decl. Ex. 1 (MAYER002981).

secured CMG a license for "Die-Draw," a slip-lining technology virtually identical to MPC's CompressionFit—one of the company's most valuable business lines:

> "*With my contacts in the UK, I started to broker the deal with Die-Draw for exclusivity for CMG. . .* **we now have a competing technology to compression Fit that Puris own[s] now through the purchase of Murphy**."[16]

> ii.    *Mayer—Not Gutierrez—Negotiated CMG's Sale to Crown*

From June 2024 through at least February 2025, Mayer negotiated the terms of CMG's putative sale to Crown with little or no apparent involvement by Gutierrez. In those discussions, ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████[17] In September 2024, Mayer offered to sell CMG to Crown for $30 million.[18]

> iii.   *Mayer—Not Gutierrez—Exercised Operational Control over CMG*

Both before and after this lawsuit was filed, Gutierrez routinely

---

[16] *Id.* (emphasis added).

[17] Fields Decl. Ex. 7 (CROWN004370-71), Ex. 3 (MAYER003057), Ex. 14 (MAYER000871, 873).

[18] *Id.* Ex. 3 (MAYER003057).

deferred to Mayer when making bidding decisions for CMG.  On October 11, 2024, while Mayer was still president of MPC, Todd Grafenauer (then also an MPC employee) emailed Mayer, copying Gutierrez, about a quote for a CompressionFit job in Utah, asking "***Let me know if you want CMG to submit or if I should send to you at MPC***." Gutierrez deferred to Mayer, asking: "***MPC or CMG?***" Mayer told them to give the job to CMG.[19]

Mayer also continued directing new HDPE business to CMG before and after joining Crown. In October 2024, Mayer emailed Crown about CMG's potential award of a lucrative pipeline job and described his involvement in previous CMG jobs, stating:

> "***We have the opportunity of the first 98-inch project in the USA with CMG, I would like to reference that we have completed successfully a XXL pipeline project in Cabo Mexico for the Carlos Alverez group.***"[20]

After joining Crown, Mayer continued to instruct Gutierrez how to run CMG, including which projects to bid and at what price.[21] In March 2025, Mayer told Croxall that Crown could transfer nearly all of the Construction Division personnel to CMG's payroll, further demonstrating his control.[22]

---

[19] *Id.* Ex. 10 (MAYER002257) (emphasis added).

[20] *Id.* Ex. 8 (MAYER002322) (emphasis added).

[21] *Id.* Ex. 11 (MAYER000375); Ex. 12 (MAYER000384).

[22] *Id.* Ex. 13 (MAYER000434). "Todd" is a reference to Todd Grafenauer.

### iv. Crown and Mayer Deliberately Concealed Mayer's Affiliation with CMG

Crown recognized that publicizing Mayer's affiliation with CMG would expose the violation of his non-compete with PURIS. In January 2025, Mayer sent Croxall [23] In response,[24]

Later, in February 2025, Mayer sent a text message to Crown's CEO, Doug Croxall, to report that he had poached one of PURIS's existing customers (the Nebraska Metropolitan Utility District) for CMG, which would generate revenues for Crown:

Mayer: "got an opportunity with an old client who said Puris can go do one [project] and if Lupee and Mike Brown is involved with CMG they would give us 6 to 8M of work......what do you think?"

Croxall: "Say yes to it for now. Secure it so we can work with Josh to structure it properly."

Mayer: "Carmelo, Mike Brown, Lupee, Lauren **no non competes**"[25]

---

[23] *See id.* Ex. 14 (MAYER000871).

[24] *Id.* (emphasis added).

[25] *Id.* Ex. 9 (MAYER000424) (emphasis added).

> ### v. Mayer's history of personal remittances to and from CMG and Gutierrez are further indicia of ownership

Other banking records and communications with Gutierrez evidence Mayer's long-standing financial interest in CMG. For example, on June 26, 2023, Mayer sent Gutierrez wire instructions for the account of Mayer's personally held entity, "MPC Newco, Inc."[26] Days later, on July 7, Mayer received payment from CMG in the amount of $250,107.05.[27] On April 29, 2024, Mayer again emailed wire instructions to Gutierrez.[28] On June 28, 2024, Mayer directed his bank to make transfers from his personal accounts in the amounts of $600,000.00 to CMG and $200,000.00 to Gutierrez.[29] While additional discovery is needed to confirm the specific reasons for these payments, at minimum, they flatly contradict Gutierrez's statements that Mayer was merely a "mentor," and that CMG has neither "received funds for shares of stock from any individual or entity since being formed" nor "distributed any funds or dividends" to anyone but Gutierrez. (Dkt. 46-1 ¶¶ 3, 6, 10).

---

[26] *Id.* Ex. 15.

[27] *Id.* Ex. 16.

[28] *Id.* Ex. 17.

[29] *Id.* Ex. 18.

2. <u>Another Holder of an Interest in CMG Attests to Mayer's
Financial Interest in CMG</u>

The documentary evidence of Mayer's ownership of CMG is corroborated by the Declaration of Richard Crow, attached to this motion. Crow is a long-time employee of MPC who was hired by Mayer in 2016.[30] In January 2025, after Mayer left the company, Crow became the president of MPC.[31]

In approximately 2021, Mayer told Crow that he planned to form a pipeline rehabilitation company with Gutierrez called CMG Pipelines, Inc.[32] When it was formed, Crow believed the purpose was for CMG to work as a local subcontractor for MPC in Louisiana,[33] but by late last year he came to to realize that CMG was taking actions that were competitive with MPC.[34]

Prior to that realization, Crow was invited by Mayer and Gutierrez to invest in CMG, and in December 2021, he personally invested $250,000 in return for a 10% stake in CMG.[35] The transaction was structured as a purported "Loan Agreement and Promissory Note" between Gutierrez and

---

[30] *See* Declaration of Richard Crow ("Crow Decl.) ¶ 2.

[31] *Id.*

[32] *Id.* ¶ 3.

[33] *Id.*

[34] *Id.* ¶ 8.

[35] *Id.* ¶ 4.

Crow, which provided Crow with an unqualified right to receive 10% of CMG's equity.[36] The other persons with financial interests in CMG were Mayer, Gutierrez and Todd Grafenauer[37] (another former MPC employee who departed with Mayer for Crown). Thereafter, Gutierrez periodically sent financial and business updates about CMG to Mayer, Crow and Grafenauer, including income statements and balance sheets, among others.[38]

In 2024, Mayer informed Crow that he was trying to sell CMG.[39] Consistent with Mayer's own communications to Crown, CMG's sale was to result in proportional sale proceeds to Mayer (40%), Gutierrez (40%), Grafenauer (10%), and Crow (10%) as the financial backers of CMG.[40] Crown did not complete its purchase of CMG. [41]

---

[36] *Id.* at Ex. A.

[37] *Id.* ¶ 6.

[38] *Id.* Exs. B-F.

[39] *Id.* ¶ 7.

[40] *Id.*

[41] *Id.*

3. <u>Gutierrez's Declaration Does Not Refute the Overwhelming Evidence that Mayer Has a Financial Interest In, and Control Over, CMG</u>

CMG and Gutierrez do not dispute that CMG is PURIS's competitor.[42] Rather they purport to dispute that CMG acts *in concert with Mayer*, either through his participation or financial interest. As previously noted, on May 12, PURIS provided nearly all the above-cited evidence to counsel for Mayer, CMG, and Gutierrez. Tellingly, neither the Relief Motion nor Gutierrez's declaration addresses this evidence or attempts to dispute it in any way.

Instead, Gutierrez submitted a declaration in which he deliberately omits explaining the deep and pervasive financial and operational ties between Mayer and CMG. (Dkt. 46-1). The declaration is designed to create the false impression that Gutierrez is the sole owner and operator of CMG, and that Mayer was merely a "mentor," when the evidence uniformly shows that Mayer treated the company as his own and has a major financial stake in its success.

Nearly every statement is either misleading or selectively omits critical facts that would reveal the true nature of CMG's ownership and control. For example, Gutierrez cites to CMG's formal corporate documents—most of which predate the relevant events—as proof that he is the only shareholder

---

[42] *See* Crow Decl. ¶ 8.

of CMG and that Mayer has never been a shareholder, director, or officer. (Dkt. 46-2). But how CMG chose to document (or not document) these relationships on paper is irrelevant when the substantive evidence demonstrates that Mayer exercised near-unilateral control over CMG's financial and operational affairs.

Gutierrez next claims, "I provided capital for CMG Pipelines, Inc. through personal loans/promissory notes," and "CMG Pipelines, Inc. has never received funds for shares of stock from any individual or entity since being formed." (Dkt. 46-1 ¶¶ 2-3).  However, he fails to disclose that these so-called "personal loans" were, in reality, made in exchange for promises to transfer equity in CMG. As shown in Gutierrez's "loan agreement" with Crow, upon repayment and the termination of any non-compete agreements, Gutierrez promised to transfer to Crow 10% of CMG's outstanding stock, with no further conditions.[43] This constitutes an equity interest on its face. The agreement also provides for the issuance of profit sharing or dividends[44]—terms that are inconsistent with a true loan and instead

---

[43] Because the only discovery exchanged in this litigation occurred on an expedited schedule, with limited search parameters, including only exchanging documents from June 2024 through April 1, 2025, and no depositions have been taken, PURIS has not yet obtained Mayer's promissory note or loan agreement, or other contemporaneous documents from 2021-2023 that would further corroborate Crow's declaration.

[44] *See* Crow Decl. Ex. A at 5.

indicate an ownership interest. And Gutierrez is conspicuously silent about the identities of those who provided these "personal loans," which were used to finance CMG.

Likewise, Gutierrez states that, "as of the date of this declaration, CMG Pipelines, Inc. has not distributed any funds or dividends to any other entity or individual other than myself." (Dkt. 46-1 ¶ 6). This is misleading, as it omits the fact that Gutierrez has personally remitted funds in the form of purported interest payments on the "loans" that were, in substance, made in exchange for CMG equity shares—including payments to Richard Crow.[45] It is also contradicted by Mayer's emails and personal banking records, which show substantial payments to and from CMG and Gutierrez since at least 2023.[46]

Gutierrez also claims that from October 2021 through December 31, 2024, CMG did not submit a bid on any project where MPC was a bidder. (Dkt. 46-1 ¶ 14). This statement is demonstrably false, as established by public records showing CMG bidding on projects against MPC.[47]

---

[45] *Id.* at ¶ 5.

[46] Fields Decl. Exs. 15-18.

[47] Public records show that CMG and MPC submitted bids for the same project on at least two occasions. In 2023 CMG and MPC both submitted bids in connection with another New Orleans project titled "DPW 761 - Box Culvert Repairs." In March 2024, CMG and MPC both submitted bids for the City of New Orleans Florida Area Development Group

In sum, Gutierrez's declaration is highly misleading. It is carefully worded to create the false impression that Mayer has no connection or financial interest to CMG, when the evidence shows otherwise. Gutierrez's statements are contradicted by documents from Mayer and Crow, and he would have the Court accept the outlandish claim that Mayer—who purportedly had no interest in or control over CMG—was to receive $12 million (or 40% of the value of the Company) under a "verbal agreement" for brokering CMG's sale to Crown. Nowhere does Gutierrez explain why CMG's other financial backers were each slated to get 10% of that proposed sale, leaving Gutierrez to receive just 40% of proceeds for the sale of the company he purportedly solely owns.

## IV.    CONCLUSION

For the above reasons, PURIS requests that the Injunction be reinstated as originally entered to restore the prohibition on CMG and Gutierrez from acting in concert or participation with Defendant Mayer to violate the Injunction.

## V.    CERTIFICATE REGARDING LOCAL RULE 3.01(g)

PURIS certifies that, as described above and as acknowledged in the Relief Motion, the parties have previously conferred both in writing and by

---

C & D solicitation. CMG won the latter contract. *See* https://www.louisianabids.com/bid-result/florida_area_development_group_c_d-13284294.

videoconference, and counsel for CMG and Gutierrez opposes the relief sought in this motion.

Dated:  June 10, 2025          Respectfully submitted,

                              ALLEN OVERY SHEARMAN
                              STERLING US LLP

                               */s/ Thad Behrens*
                              Thad Behrens (*pro hac vice*)
                              Jacob Fields (*pro hac vice*)
                              Danielle Canfield Vorbrodt (*pro hac vice*)
                              2601 Olive Street, 17th Floor
                              Dallas, Texas 75201
                              Telephone: (214) 271-5777
                              thad.behrens@aoshearman.com
                              jacob.fields@aoshearman.com
                              danni.vorbrodt@aoshearman.com

                              GUNSTER YOAKLEY & STEWART, P.A.

                              William K. Hill
                              Florida Bar Number 747180
                              Lauren V. Purdy
                              Florida Bar Number 93943
                              Rebecca A. Maturo
                              Florida Bar Number 1049429
                              1 Independent Drive, Suite 2300
                              Jacksonville Florida 32202
                              Telephone: (904) 354-1980
                              Facsimile: (904) 354-2170
                              whill@gunster.com
                              lpurdy@gunster.com
                              rmaturo@gunster.com

                              *Attorneys for Plaintiff PURIS LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2025, the foregoing was electronically filed and served on all parties' counsel of record via the Court's CM/ECF system, and was additionally served via electronic mail to:

Scott P. Yount
Christopher Hall
Garrison, Yount, Forte &
 Mulcahy, L.L.C.
601 Bayshore Boulevard,
Suite 800
Tampa, Florida 33606-2760
syount@garrisonyount.com
chall@garrisonyount.com

Scott Champagne
Paul Politz
Samantha Griffin
Taylor Wellons Politz & Duhe
1555 Poydras Street,
Suite 2000
New Orleans LA 70112
schampagne@twpdlaw.com
ppolitz@twpdlaw.com
sgriffin@twpdlaw.com

*Counsel for Non-Parties*
*CMG Pipelines, Inc. and Carmelo Gutierrez*

*/s/  Thad Behrens*
Thad Behrens